UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

8824/DCR/tzo

CATHLYN ANN POZDOL, as Personal
Representative of the Estate of                          Case No.
Drew Randolph Pozdol,
    *Plaintiff*,
v.

CITY OF MIAMI, TOMAS REGALADO,
individually and in his capacity as Mayor
of the City of Miami, MIGUEL A. EXPOSITO,
individually and in his capacity as the former
Chief of Police for the City of Miami, and RAFAEL
BORROTO, individually and in his capacity
as a City of Miami Police Officer,
    *Defendants*.
_____/

## COMPLAINT

The Plaintiff, CATHLYN ANN POZDOL, as Personal Representative of the Estate of Drew Randolph Pozdol ("Drew Pozdol"), sues the Defendants, the CITY OF MIAMI (the "City"), TOMAS REGALADO, MIGUEL A. EXPOSITO, and RAFAEL BORROTO, and alleges:

### Nature of the Case

1. This lawsuit presents claims for damages for the wrongful death of Drew Pozdol, brought by CATHLYN ANN POZDOL, as Personal Representative of his Estate, on behalf of the estate and his statutory survivors.

2. This action alleges violations of civil rights and other state and federal laws which resulted in Drew Pozdol's death on August 21, 2011.

3. This suit asserts that the Defendants acted illegally, improperly, and negligently in that the acts and/or omissions of the City, its police department, its police

        officers, and police supervisors created an atmosphere of hostility and harassment against citizens, including Drew Pozdol.

4. Further, this lawsuit alleges that on August 21, 2011, Officer BORROTO, who was employed by the City of Miami Police Department unjustifiably and without provocation shot and killed Drew Pozdol. Said shooting was illegal, negligent, and improper.

5. As more particularity alleged herein, Defendant City, its elected officials, police department, and police officers are legally liable for Drew Pozdol's death because of their pattern and practice of failing to properly hire, train, supervise, discipline, and/or retrain their police force in a manner consistent with the protections afforded under the Constitution of the United States of America, federal statutes, and Florida law.

6. This lawsuit asserts that the City Mayor and the City Police Chief were deliberately indifferent in disregarding numerous complaints made by citizens against the police force. In so doing, Defendants failed to establish or execute a reasonable review of policy for the consideration and redress of citizen's complaints against police officers; that such failure resulted in police officers operating on a day-to-day basis without any real concern for internal supervisory review so that "street justice" became commonplace; that this failure resulted in an atmosphere of invulnerability for the members of the police force; and that the City's dereliction of its governmental function all culminated in the shooting of Drew Pozdol on August 21, 2011.

7. This suit further alleges that Drew Pozdol was killed after BORROTO fired three shots at close range, each hitting Drew Pozdol in the chest, even though immediately prior to the shooting Drew Pozdol was unarmed, and was not a threat to BORROTO, himself, or anyone else.

8. Plaintiff seeks damages against Defendants for violation of Drew Pozdol's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America pursuant to 42 U.S.C. §1983, as well as other federal laws. Additionally, Plaintiff asserts state law claims of negligence and wrongful death, as well as demand trial by jury.

## Jurisdiction and Venue

9. This action for damages is brought to redress violations of federally-protected constitutional rights pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, along with supplemental state-law claims for wrongful death.

10. This Court enjoys jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(1), (3), and (4), 2201 and 2202; whereas 28 U.S.C. § 1367(a) grants the Court supplemental jurisdiction over the state-law claims.

11. Furthermore, an additional pendent claim under the laws of the State of Florida for wrongful death is being brought pursuant to Florida Statute §§768.16 – 768.27 (Florida's Wrongful Death Act") and Fla. Stat. § 768.28 (Florida's "Waiver of Sovereign Immunity in Tort Actions").

12. Venue properly lies in the Southern District of Florida because all events giving rise to this action occurred in Miami-Dade County, Florida.

**13.** Notice of this claim has been provided to the Defendants in accordance with Fla. Stat. §768.28 and Plaintiff has satisfied all conditions precedent to bring this lawsuit. (See copy of letter to Mayor Tomas Regalado *et al* dated September 8, 2011, which is attached hereto as Exhibit A).

## The Parties

**14.** The Plaintiff, CATHLYN ANN POZDOL, is and at all times material hereto was an adult resident and citizen of the State of Florida.

**15.** Ms. POZDOL is, pursuant to the laws of the State of Florida, the Personal Representative of the Estate of her adult son, Drew Randolph Pozdol, and is authorized by law to bring this action.

**16.** Drew Pozdol was, at the time of his death and at all times material hereto, a resident and citizen of the State of Florida.

**17.** Drew Pozdol died as a result of injuries sustained on or about August 21, 2011, when he was shot and killed by BORROTO, a police officer employed by the City.

**18.** The Defendant City is a municipality, organized under the laws of the State of Florida, located within Miami-Dade County, Florida, which is responsible through its officers, employees, servants, and agents for enforcing the rules and regulations of the City, and for ensuring that its officers, employees, servants, and agents obey the laws of the United States of America and the State of Florida.

**19.** The City at all times material hereto operated the City of Miami Police Department (the "Department").

20. Defendant REGALADO was, at all times material hereto, the Mayor of the City, acting under color of law, to wit: under color of statutes, ordinances, regulations, policies, and customs of the State of Florida and/or the City of Miami.

21. Defendant EXPOSITO was, at all times material hereto, the duly appointed Police Chief of the City acting under color of law, to wit: under color of statutes, ordinances, regulations, policies, and customs of the State of Florida and/or the City of Miami.

22. Defendant BORROTO was, at all times material hereto, a duly appointed police officer of the Department, acting within the course and scope of his employment and/or acting under color of law, employed by the City. The actions of BORROTO as alleged herein were taken under the color of law employed by and serving under Defendants EXPOSITO and REGALADO.

## Jury Demand

23. Ms. POZDOL demands a trial by jury of all issues so triable as of right.

## General Allegations

24. On or about Sunday, August 21, 2011, between 1 and 2 a.m., at the Via del Rio restaurant, located within the City of Miami, BORROTO, a police officer employed by the City, unjustifiably and without provocation shot twenty-six year-old Drew Pozdol three times in the chest, killing him.

25. Without displaying any sign of aggression or trouble, Drew Pozdol had approached the restaurant on his way home.

26. BORROTO aggressively accosted Drew Pozdol, immediately initiating an unnecessary and wholly unwarranted confrontation. For no apparent reason,

BORROTO drew his service weapon and pushed Drew Pozdol down the sidewalk with the barrel of the weapon.

27. Drew Pozdol was unarmed; was not a threat to BORROTO, himself, or anyone else; and was complying by backing away from BORROTO with his hands empty and up, palms out and open. At no point did Drew Pozdol display any weapon or in any way physically threaten BORROTO or any other person in the vicinity.

28. BORROTO suddenly, without justification, and without provocation, fired three shots at close range; each shot struck Drew Pozdol in the chest.

29. At no point after shooting Drew Pozdol did BORROTO attempt to assist Drew Pozdol, render first aid, or summon assistance for Drew Pozdol.

30. Drew Pozdol died from the gunshot wounds inflicted by BORROTO.

31. BORROTO's killing of Drew Pozdol is but one of many in a rash of questionable officer-involved shootings amid an epidemic of botched internal-affairs investigations in the City and Department.

**COUNT I – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST THE CITY**

32. Ms. POZDOL re-alleges the allegations of paragraphs 1-31, *supra*, and incorporates them as if stated herein in full.

33. At all times material hereto, Defendant City, as represented by the acts of its employees, Defendants REGALADO and EXPOSITO, permitted, tolerated and caused a pattern and practice of unjustified, unreasonable, and/or illegal uses of force against members of the public by police officers of the Defendant City. Although such acts were improper, police officers involved were not prosecuted and/or disciplined and/or retrained. In fact, some of said incidents were covered

up with official claims that the police officers' acts were justified and proper. As a result, the City's police officers, including Defendant BORROTO, were caused and encouraged to believe that members of the public could be subjected to illegal uses of force and that such illegal uses of force would be permitted by the City.

34. In the instant matter, BORROTO acted at all times material hereto under color of law and within the course and scope of his employment as an officer of the Department.

35. A reasonable officer standing in the shoes of BORROTO and confronted with the same circumstances would believe that <u>no force</u>—much less deadly force—was necessary in the situation. Drew Pozdol had committed no crime. He brandished no weapon and posed no threat to the safety of BORROTO, himself, or others. Drew Pozdol complied with BORROTO's shove down the sidewalk, offered no physical resistance, and made no attempt to flee. BORROTO shot and killed Drew Pozdol when Drew Pozdol had his hands up and open, with his palms out.

36. The City was responsible for following and implementing all relevant laws, rules, regulations, and policies with regard to screening, hiring, retaining, training, supervising, controlling, disciplining, and assigning to duties the officers of the Department.

37. The City was deliberately, callously, or recklessly indifferent to the rights of individuals, particularly Drew Pozdol, in that it instituted a custom or policy of negligently, recklessly, or willfully failing properly to screen, hire, retain, train,

supervise, control, discipline, and assign to duties the officers of the Department, notwithstanding the unusually high numbers and frequency of officer-involved shootings.

38. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, against individuals such as Drew Pozdol.

39. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, more frequently than officers in other similarly-sized and similarly-situated cities.

40. The Department and the City had a custom and practice of using excessive force, including lethal force when the circumstances called for less-than-lethal force or no force, when alternative means of handling the situation were available.

41. The Department and the City failed by custom and practice to have any effective policy or procedure to prevent the use of excessive force against individuals such as Drew Pozdol.

42. The City failed to determine whether members of the Department, particularly BORROTO, posed a threat to the public as a result of their propensity to commit unlawful acts and to engage in violent activity.

43. The Department and the City acted with deliberate, callous, or reckless indifference to the constitutional rights of Drew Pozdol.

44. The City knew or should have known that its deliberate, callous, or reckless indifference foreseeably would result in injury to members of the public, including Drew Pozdol.

45. In light of the excessive number and frequency of officer-involved shootings, the need for the City to train or retrain officers on the use of force and to investigate and discipline officers involved in unjustified shootings was obvious.

46. Despite its knowledge of the dangerous propensities of the members of the Department, particularly BORROTO, the City failed and refused to remove such members of the Department from their positions as police officers, failed and refused to take meaningful disciplinary action against such members of the Department, and failed to provide redress for members of the public, such as Drew Pozdol, who have been injured thereby.

47. The City, through its deliberate, callous, or reckless indifference, failed to ensure that the members of the Department, particularly BORROTO, while acting within the course and scope of their employment and while acting under color of law, would not violate the constitutional and statutory rights of the public, including Drew Pozdol.

48. The City of Miami Police Department, though its officers, maintained a custom or policy of using excessive force.

49. The City caused, permitted, and tolerated a pattern and practice of unjustified, unreasonable, unlawful, and excessive use of force against members of the public by officers of the Department, and failed to prosecute, discipline, or train the officers involved, causing and encouraging the members of the Department

to believe that individuals could be subjected to the use of excessive force and that the City would permit and protect such use of excessive force.

50. The above-described conduct represents a pattern and practice by which members of the public were injured or killed by the intentional and/or reckless misconduct of the City's police officers and/or that serious incompetence or misbehavior was widespread throughout the Department.

51. The City established and maintained a system of reviewing incidents and complaints of abuse of authority, such as, *inter alia*, the excessive use of force by members of the Department, that failed to identify the abuse of authority and use of excessive force as such and failed to subject the officers involved to appropriate supervision, discipline, and training, such that it has become the custom, policy, pattern, and practice of the City to encourage and tolerate such abuse of authority and use of excessive force.

52. The City, through the Department, has maintained a longstanding, wide spread history of failing to properly hire, train, supervise, and/or discipline its officers for, *inter alia*, illegal uses of force, even though there has been repeated, widely publicized notice of the unlawful and improper conduct of its employees.

53. The above referenced acts, omissions, policies, and customs of the City caused its police officers, including Defendant BORROTO, to believe that such acts of improper uses of force would not be properly monitored by supervisory officers, and would not be properly investigated or sanctioned, but instead would be tolerated. The foreseeable result being that officers, like Defendant BORROTO, were more likely to use improper or excessive force.

54. The actions of the Department and the City violated Drew Pozdol's clearly established, well-settled, and constitutionally protected rights to not be deprived of his life, to not be deprived of his liberty without due process of law, and to be free from the use of excessive, unreasonable, and unjustified force against his person.

55. Drew Pozdol was a victim of such abuse of lawful authority and Defendant BORROTO's illegal acts were the direct result of the above-described acts, omissions, policies, or customs of the City. Furthermore, as a result of the City's and Department's pattern and practice of using excessive force and the rash of unjustified officer-involved homicides, the U.S. Department of Justice has opened an investigation into the City's and Department's use of deadly force, including an investigation into the Drew Pozdol's death.

56. As a direct and proximate result of the deprivation of his constitutionally protected rights, Drew Pozdol lost his life and incurred damages, including physical pain and suffering and emotional trauma and suffering.

57. The Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, claims damages for the wrongful death of Drew Randolph Pozdol, including but not limited to the loss of his income, net accumulations, funeral expenses, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, prays that this Honorable Court

enter judgment against the Defendant, CITY OF MIAMI, for violating 42 U.S.C. § 1983, declare the acts of the CITY OF MIAMI violative of Drew Randolph Pozdol's constitutionally protected rights, award compensatory damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

## **COUNT II – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST REGALADO AND EXPOSITO**

58. Ms. POZDOL re-alleges the allegations of paragraphs 1-31, *supra*, and incorporates them as if stated herein in full.

59. Defendants REGALADO and EXPOSITO were charged with the responsibility of adopting and implementing rules and regulations for employees of the City, including officers of the City of Miami Police Department.

60. At all times material hereto, REGALADO and EXPOSITO were responsible for implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, assigning and disciplining police officers of the City.

61. REGALADO and EXPOSITO were deliberately indifferent in that they either expressly or impliedly acknowledged and assented to the failure to train, supervise, control, and/or otherwise screen officers of the Department, including but certainly not limited to BORROTO for dangerous propensities, lack of training, and/or skill or other characteristics making said police officers unfit to perform their duties.

62. REGALADO and EXPOSITO were deliberately indifferent to the rights of the public, including Drew Pozdol, in that they failed to determine whether officers of

the Department, including BORROTO posed a threat to the public as a result of their propensity to commit unlawful acts and/or engage in violent activity.

63. REGALADO and EXPOSITO, through their deliberate indifference, failed to ensure that police officers of the City did not violate the constitutional and statutory rights of citizens of the State of Florida, including Drew Pozdol, while said police officers were acting under color of state law for the City.

64. The deliberate indifference of REGALADO and EXPOSITO exhibited a reckless and callous disregard for the rights of persons, including Drew Pozdol, who might be assaulted, injured, battered, or killed by police officers of the City who had been inadequately trained, supervised, and/or disciplined.

65. Despite the notice and knowledge of REGALADO and EXPOSITO as to the dangerous propensities of their police officers, REGALADO and EXPOSITO failed to implement policies or programs to properly train said officers or otherwise intentionally failed to protect the public, including Drew Pozdol, from danger.

66. REGALADO and EXPOSITO were deliberately indifferent in the selection, training, supervision, and/or retention of BORROTO as a member of the Department.

67. Plaintiff's injuries were caused by the previously described acts, omissions, policies, or customs of REGALADO and EXPOSITO.

68. The policies and customs implemented by REGALADO and EXPOSITO deprived Drew Pozdol of his rights protected by the Constitution of the United States of America and 42 U.S.C. §1983 by depriving him of the following:

   a. The right and privilege not to be deprived of life and liberty without due process of law and equal protection of the law in violation of the Fifth and Fourteenth Amendments of the United States Constitution;

   b. The right and privilege to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution;

   c. The right and privilege to a public jury trial, not "street justice," in violation of the Sixth Amendment of the United States Constitution;

   d. The right and privilege to be free from unreasonable seizures of one's person and/or excessive use of force in violation of the Fourth Amendment of the United States Constitution; and

   e. The right to be free from unreasonable conduct when the person or persons responsible for such conduct are acting under color of law in violation of the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

69. As a direct and proximate result of the acts described herein, in violation of the United States Constitution, Ms. POZDOL claims damage for the wrongful death of Drew Pozdol.

70. The Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, claims damages for the wrongful death of Drew Randolph Pozdol, including but not limited to the loss of his income, net accumulations, funeral expenses, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, prays that this Honorable Court enter judgment against the Defendants, TOMAS REGALADO and MIGUEL A. EXPOSITO, for violating 42 U.S.C. § 1983, declare the acts of TOMAS REGALADO and MIGUEL A. EXPOSITO violative of Drew Randolph Pozdol's constitutionally protected rights, award compensatory damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

### COUNT III – VIOLATION OF CIVIL RIGHTS UNDER § 1983 AGAINST BORROTO

71. Ms. POZDOL re-alleges the allegations of paragraphs 1-31, *supra*, and incorporates them as if stated herein in full.

72. BORROTO, when he accosted, shot, and killed Drew Pozdol, subjected Drew Pozdol to the deprivation of clearly established rights, privileges, and immunities secured by the Constitution and laws of the United States, including the right to be free from unreasonable seizure, the right to not be deprived of life and liberty without due process of law, and the right to be free from the use of excessive force against his person.

73. BORROTO's conduct was committed with deliberate, callous, or reckless indifference to Drew Pozdol's constitutional rights.

74. Any reasonable officer standing in BORROTO's shoes would have known that BORROTO's conduct foreseeably would result in the deprivation of Drew Pozdol's constitutional rights.

75. Alternative means, other than the use of lethal force, were available to handle the situation.

76. In BORROTO's interaction with Drew Pozdol, there was at stake no governmental interest: Drew Pozdol had committed no crime; Drew Pozdol was not a threat to BORROTO, himself, or others; Drew Pozdol was not actively resisting BORROTO; Drew Pozdol made no threatening moves; Drew Pozdol was not fleeing.

77. As a direct and proximate result of the deprivation of his constitutionally protected rights, Drew Pozdol lost his life and incurred damages, including physical pain and suffering and emotional trauma and suffering.

78. The Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, claims damages for the wrongful death of Drew Randolph Pozdol, including but not limited to the loss of his income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice, as well as physical pain and suffering and emotional trauma and suffering.

**WHEREFORE,** the Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, prays that this Honorable Court enter judgment against the Defendant, RAFAEL BORROTO, for violating 42 U.S.C. § 1983, declare the acts of RAFAEL BORROTO violative of Drew Randolph Pozdol's constitutionally protected rights, award compensatory damages, award punitive damages, and award attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), along with any and all other relief the Court deems proper and just.

## **COUNT IV – WRONGFUL DEATH AGAINST THE CITY**

79. Ms. POZDOL re-alleges the allegations of paragraphs 1-31, *supra*, and incorporates them as if stated herein in full.

80. This is an action for damages brought pursuant to the Florida Wrongful Death Act, sections 768.28 and 768.16 to .26, Florida Statutes.

81. Ms. POZDOL has been named Personal Representative of Drew Pozdol's Estate.

82. The survivors in this wrongful death action are Drew Pozdol's mother, Ms. POZDOL, and Drew Pozdol's father. Drew Pozdol's father has waived all rights to any claim for damages resulting from Drew Pozdol's death and all rights to inherit from the Estate, leaving Ms. POZDOL as the sole potential beneficiary of a recovery in this action.

83. At all times material hereto, Defendant BORROTO was an agent, servant, or employee of the City, acting within the course and scope of his employment.

84. At all times material hereto, Defendant BORROTO used his firearm with the knowledge, consent, and permission of the City.

85. Police officers have a common-law duty to exercise reasonable care in carrying out their law-enforcement responsibilities.

86. BORROTO breached that duty by using his firearm in a careless and negligent manner so as to legally, directly, and proximately cause the wrongful death of Drew Pozdol.

87. A reasonable officer standing in BORROTO's shoes and confronted with the same circumstances would believe that no force—much less deadly force—was necessary in the situation.

88. Alternative means of handling the situation were available to BORROTO.

89. As a direct and proximate result of the BORROTO's breach of his duty, Drew Pozdol was killed.

90. As a further direct and proximate result of the BORROTO's breach of his duties, Ms. POZDOL suffered damages, including the loss of Drew Pozdol's support and services, mental pain and suffering, and funeral and burial expenses; the Estate of Drew Randolph Pozdol suffered the loss of prospective net accumulations.

91. The City is vicariously liable for the actions and omissions of BORROTO, who was acting within the course and scope of his employment when he shot and killed Drew Pozdol.

**WHEREFORE,** in light of the foregoing, the Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, prays that this Honorable Court enter judgment against the Defendant, CITY OF MIAMI, and award damages for loss of support and services, mental pain and suffering, funeral and burial expenses, and lost prospective net accumulations, along with all other relief the Court deems proper and just.

## **COUNT V – WRONGFUL DEATH AGAINST RAFAEL BORROTO**

92. Ms. POZDOL re-alleges the allegations of paragraphs 1-31, *supra*, and incorporates them as if stated herein in full.

93. This is an action for damages brought pursuant to the Florida Wrongful Death Act, sections 768.16 to .26, Florida Statutes.

94. Ms. POZDOL has been named Personal Representative of Drew Pozdol's Estate.

95. The survivors in this wrongful death action are Drew Pozdol's mother, Ms. POZDOL, and Drew Pozdol's father. Drew Pozdol's father has waived all rights to any claim for damages resulting from Drew Pozdol's death and all rights to inherit from the Estate, leaving Ms. POZDOL as the sole potential beneficiary of a recovery in this action.

96. Police officers have a common-law duty to exercise reasonable care in carrying out their law-enforcement responsibilities.

97. BORROTO breached that duty when he shot Drew Pozdol in the chest three times.

98. A reasonable officer standing in BORROTO's shoes and confronted with the same circumstances would believe that no force—much less deadly force—was necessary in the situation.

99. Alternative means of handling the situation were available to BORROTO.

100. BORROTO's conduct in interacting with Drew Pozdol was committed in a manner exhibiting wanton and willful disregard of human rights and safety.

101. As a direct and proximate result of BORROTO's breach of his duty, Drew Pozdol was killed.

102. As a further direct and proximate result of BORROTO's breach of his duties, Ms. POZDOL suffered damages, including the loss of Drew Pozdol's support and

services, mental pain and suffering, and funeral and burial expenses; the Estate of Drew Randolph Pozdol suffered the loss of prospective net accumulations.

**WHEREFORE,** in light of the foregoing, the Plaintiff, CATHLYN ANN POZDOL, as the Personal Representative of the Estate of Drew Randolph Pozdol, prays that this Honorable Court enter judgment against the Defendant, RAFAEL BORROTO, and award damages for loss of support and services, mental pain and suffering, funeral and burial expenses, and lost prospective net accumulations, as well as punitive damages, along with all other relief the Court deems proper and just.

Dated this 17th day of June, 2013.        Respectfully submitted,

  /s/Domingo C. Rodriguez
Domingo C. Rodriguez, Esq. (F.B.N. 394645)
domingo@rslawmiami.com
Sarah D. Schooley, Esq. (F.B.N. 10083)
sarah@rslawmiami.com
**Rodriguez Schooley Law Firm, LLC**
2121 Ponce de Leon Blvd., Suite 430
Miami, Florida 33134
Tel: (305)774-1477~Fax: (305)774-1075