UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22167-CIV-KING

CATHLYN ANN POZDOL, as Personal Representative
of the Estate of Drew Randolph Pozdol,

    Plaintiff,

v.

CITY OF MIAMI, TOMAS REGALADO, individually
and in his capacity as Mayor of the City of Miami,
MIGUEL A. EXPOSITO, individually and in his capacity
as the former Chief of Police for the City of Miami, and
RAFAEL BORROTO, individually and in his capacity
as a City of Miami Police Officer,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS AND MOTION TO STAY

**THIS MATTER** comes before the Court upon Defendant City of Miami's, Tomas Regalado's, and Miguel Exposito's Motion to Dismiss First Amended Complaint and Motion to Strike (DE 18), filed September 3, 2013; Defendant Rafael Borroto's Motion to Dismiss First Amended Complaint and Motion to Strike (DE 30), filed November 4, 2013; and Defendants' Motion to Stay Proceedings Pending Resolution of Related State Criminal and Administrative Investigations (DE 32), filed November 12, 2013. The Court has been fully briefed as to all motions.[1] After providing a brief background, the Court shall address the motions in turn.

---

[1] With respect to Defendant City of Miami's, Tomas Regalado's, and Miguel Exposito's Motion to Dismiss, the Court has also considered Plaintiff's Response in Opposition (DE 21), filed on September 27, 2013, Defendants' Reply (DE 24), filed on October 9, 2013, and Plaintiff's Surreply (DE 26-2), filed on October 15, 2013; with respect to Defendant Borroto's Motion to Dismiss, the Court has also considered Plaintiff's Response in Opposition (DE 31), filed on November 12, 2013, and Defendant's Reply (DE 33), filed on November 15, 2013; and, with respect to Defendants' Motion to Stay, the Court has also considered Plaintiff's Response in

1

## I. BACKGROUND

This action arises from the alleged shooting of Drew Randolph Pozdol by a City of Miami police officer, Sergeant Rafael Borroto. Plaintiff's Amended Complaint (the "Complaint") (DE 15) alleges that, in the early morning hours of August 21, 2011, Pozdol was walking down a sidewalk when he was confronted by Defendant Borroto for no apparent reason. Plaintiff goes on to allege that, without provocation or justification, Defendant Borroto drew his service weapon on Pozdol, used the barrel of his weapon to shove Pozdol along the sidewalk, and then shot Pozdol three times in the chest, which resulted in Pozdol's death. Based on these facts, Plaintiff, as personal representative of the decedent's estate, brought the instant action under 42 U.S.C. § 1983 against the City of Miami (Count I); then-Chief of Police of the City of Miami, Miguel Exposito and the Mayor of the City of Miami, Tomas Regalado, in both their individual and official capacities (Count II); and Sergeant Borroto, in both his individual and official capacities (Count III). Plaintiff additionally asserts claims for wrongful death against the City of Miami (Count IV) and Sergeant Borroto (Count V).

## II. LEGAL STANDARD ON MOTION TO DISMISS

Rule 8 requires that a complaint include a "short and plain statement" demonstrating that the claimant is entitled to relief. Fed R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. *Id.* at 681.

---

Opposition (DE 36), filed on December 10, 2013, Defendants' Reply (DE 37), filed on December 20, 2013, and Plaintiff's Surreply (DE 39-2), filed on December 24, 2013.

When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. *Iqbal*, 556 U.S. at 664. However, the Court's duty to accept the factual allegations in the complaint as true does not require it to ignore specific factual details "in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007). And, where documents considered part of a pleading "contradict the general and conclusory allegations" of the pleading, the document governs.[2] *Id.* If the Court identifies such conclusory allegations, it must then consider whether the remaining allegations "plausibly suggest an entitlement to relief." *See Iqbal,* 556 U.S. at 681. The Court must dismiss a complaint that does not present a plausible claim entitled to relief.

## III. DISCUSSION

The Court will address Defendant Borroto's Motion to Dismiss first, as his actions lie at the core of Plaintiff's claims against all Defendants. The Court will then address the City of Miami's (the "City"), Tomas Regalado's, and Miguel Exposito's Motion to Dismiss, as well as Defendants' Motion to Stay.

### A. Sergeant Rafael Borroto's Motion to Dismiss and Motion to Strike

Defendant Borroto moves to dismiss Count III to the extent that Count III asserts: 1) an "official capacity" claim against Borroto, 2) that Borroto is liable not only pursuant to 42 U.S.C. § 1983, but also pursuant to "other federal laws,"[3] and 3) that decedent's rights under the Fifth and Fourteenth Amendments were violated by Borroto's alleged conduct. Plaintiff has all but

---

[2] Furthermore, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." Brooks v. Blue Cross and Blue Shield of FL, Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

[3] Defendant Borroto's Motion to Dismiss actually seeks to strike any reference to "other federal laws." (*See* DE 30 at 4).

3

conceded that Defendant is entitled to the relief sought, and the Court finds that the relief is warranted.

### 1. Official Capacity Claim

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, the "official capacity" claim in Count III against Defendant Borroto is the functional equivalent of the claim against the City in Count I, and is, therefore, redundant. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, Count III, to the extent that it asserts an "official capacity" claim against Defendant Borroto, is dismissed.

### 2. References to "other federal laws"

The Complaint asserts that Count III is brought not only pursuant to 42 U.S.C. § 1983, but pursuant to "other federal laws" as well. (DE 15, ¶ 8). However, section 1983 is the exclusive federal remedy for violations of rights guaranteed in 42 U.S.C. § 1981 by state governmental units. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). Accordingly, Count III, to the extent that it relies on "other federal laws," is dismissed.

### 3. Violation of Rights Under the Fifth and Fourteenth Amendments

Count III asserts a claim under section 1983 for violation of decedent's constitutional rights under, *inter alia,* the Fourth, Fifth, and Fourteenth Amendments. (DE 15, ¶¶ 8-9). The Fifth Amendment is not implicated by the facts alleged in the Complaint, and the Supreme Court has held that section 1983 actions for excessive force are to be analyzed under the Fourth Amendment, rather than the Fourteenth. *See Graham v. Connor*, 490 U.S. 386, 388 (1989).

Accordingly, Count III, to the extent that it is based upon alleged violations of decedent's rights under the Fifth and Fourteenth Amendments, is dismissed.

### B. City of Miami's, Tomas Regalado's, and Miguel Exposito's Motion to Dismiss and Motion to Strike

Defendants, City of Miami (the "City"), Tomas Regalado, and Miguel Exposito, initially sought dismissal of both Counts I and II, citing a failure to state a cause of action upon which relief can be granted. However, upon the City's withdrawal of its argument that Plaintiff failed to state a cause of action in Count I,[4] the Court is left only to consider: 1) whether Plaintiff has adequately stated a cause of action against Defendant Regalado in Count II,[5] 2) whether Plaintiff has adequately stated a cause of action against Defendant Exposito in Count II,[6] 3) whether Plaintiff's "official capacity" claims against Defendants Regalado and Exposito are permissible in an action where the City is also a defendant, 4) whether Plaintiff can properly state a claim under 42 U.S.C. § 1983 for alleged violations of either the Fifth or Fourteenth Amendments.

#### 1. Mayor Tomas Regalado

Defendant Regalado moves to dismiss Count II for failure to state a cause of action and, alternatively, on the basis of his asserted qualified immunity from civil liability. Defendant Regalado argues that he has no statutory, constitutional, or any other responsibility under the law for the conduct of the Miami Police Department, and, accordingly, that Plaintiff is unable to state a cause of action against him which demonstrates plausible entitlement to relief.[7]

---

[4] (*See* DE 24 at 3).
[5] The Court need not consider Defendant Regalado's claim to qualified immunity. *See infra* note 9.
[6] The Court will consider Defendant Exposito's claim to qualified immunity in conjunction with his claim that Plaintiff has failed to state a cause of action.
[7] To establish a defense of qualified immunity a Defendant must show, as a preliminary matter, that the challenged conduct forms a discretionary duty of his office. *See infra* discussion of qualified immunity in Part. III.B.2. Accordingly, if Defendant is correct in his assertion that he has no responsibility under the law for the conduct of the Miami Police Department, he is not

5

Plaintiff concedes that Defendant Regalado did not personally participate in the constitutional deprivation at issue in this action. Instead, Plaintiff seeks to hold Defendant Regalado liable as Defendant Borroto's supervisor. The Complaint alleges, *inter alia*, that Defendant Regalado: 1) was "responsible for implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, assigning, and disciplining officers of the City," 2) "expressly or impliedly acknowledged and assented to the failure to train, supervise, control, and/or otherwise screen officers," 3) "through [his] deliberate indifference, failed to ensure that police officers of the City did not violate the constitutional and statutory rights of citizens of . . . Florida," and 3) "despite notice and knowledge . . . as to the dangerous propensities of [the City's] police officers, failed to . . . properly train said officers or otherwise intentionally failed to protect the public . . . from danger." (DE 15, ¶¶ 72, 73, 75, 77).

Defendant's argument relies primarily upon several cases from this district in which the court determined that, with respect to Miami-Dade County (the "County"), the county manager – not the mayor – is in charge of overseeing the police department.[8] *See Diaz-Martinez v. Miami-Dade County*, No. 07-20914, 2009 WL 2970468, at *11 (S.D. Fla. Sept. 10, 2009) (Lenard, J.) (chief of police and mayor are not County's final policymakers for the Miami-Dade Police Department); *see also Moore v. Miami-Dade County*, 502 F.Supp. 2d 1224, 1230 n.4 (S.D. Fla. 2007) (Gold, J.) ("The final policy making authority for Miami-Dade County rests solely with the Board of County Commissioners or the County Manager."); *Lawrence v. Metro. Dade County*, 872 F.Supp. 957, 964 (S.D. Fla. 1994) (Ungaro, J.) (noting that the county manager oversees the police department). While Defendant insists that the Miami-Dade County Home

---

entitled to qualified immunity from suit, but, rather, Plaintiff is simply unable to state a cognizable claim for relief against him.

[8] As Defendants failed to properly raise this argument until their Reply, (DE 21), the Court has also considered Plaintiff's Surreply, (DE 26-2), to Defendants' Motion to Dismiss.

6

Rule Charter's (the "County Charter") provisions are "almost identical" to those of the City of Miami Charter (the "City Charter"), a careful analysis of both reveals significant differences. *See generally* Miami-Dade County Home Rule Charter; Miami, Fla. Charter. For example, the County Charter plainly states that the "Board of County Commissioners shall be the legislative and the governing body of the county" and the county manager "shall be the chief executive officer and head of the administrative branch of the county government," while the City Charter: 1) ascribes the powers of the chief executive to the mayor; 2) makes the mayor the presiding officer of the city commission, which "exercises all powers conferred upon the city;" and 3) makes the city manager the chief administrative officer of the City. *Compare* Miami-Dade County Home Rule Charter §§ 1.01(A), 3.01 *with* Miami, Fla. Charter Part I.A. §§ 4(a), (g). Accordingly, the Court is unable to simply rely on the other courts of this district's persuasive precedent interpreting the powers and duties of County officials to determine the powers and duties of City officials.

The City Charter establishes the powers and duties of City officials. *See generally* Miami, Fla. Charter. The City Charter charges the city manager with seeing that the laws are enforced and with exercising control over all administrative departments established by the City Charter. *Id.* at Part I.A. §16(a), (c). The police force is part of the Department of Public Safety, an administrative department. *Id.* at Part I.A. §§ 18, 24. While the mayor appoints the city manager, and has the authority to remove a city manager, the Charter expressly places the ultimate control of the City's administrative departments – and the police force – in the city manager's hands. Accordingly, Plaintiff is unable to establish a causal connection between the alleged

constitutional deprivation at issue in this action and Defendant Regalado, and Count II, to the extent that it states a claim for supervisory liability against Defendant Regalado, is dismissed.[9]

### 2. Former Chief of Police Miguel Exposito

Defendant Exposito moves to dismiss Count II for failure to state a cause of action and, alternatively, on the basis of his asserted qualified immunity from civil liability. As the chief of police, Defendant Exposito had immediate direction and control of the police force.[10] Miami, Fla. Charter Part I.A. § 24. As it is not disputed whether Defendant Exposito's supervision of the Miami Police Department was a discretionary duty of his office,[11] it is necessary to determine whether he is entitled to qualified immunity from liability. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005)

Government officials are entitled to qualified immunity from civil liability in their individual capacities when performing discretionary functions of their office "insofar as their conduct does not violate clearly established statutory or constitutional rights . . . ." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity protects "all but the plainly incompetent or one who is knowingly violating federal law."[12] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). In determining a defendant's entitlement to qualified immunity, courts

---

[9] As the Court has determined that Plaintiff is unable to state a claim against Defendant Regalado for supervisory liability under 42 U.S.C. § 1983, it need not address his asserted claim to qualified immunity.

[10] Indeed, the Charter states that, "[t]he chief of police . . . shall have the right and power to suspend any of the officers and employees in [his] respective division who may be under [his] management and control for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just and reasonable cause" and "[t]he chief of police shall have the immediate direction and control of the police force." Miami, Fla. Charter Part I.A. §§ 24(a), 25.

[11] The Court notes that Defendant failed to claim that he was engaged in a discretionary duty, but Plaintiff does not argue that Defendant was not engaged in a discretionary duty. (DE 21, ¶ 42).

[12] The doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from . . . liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

8

employ a multi-step, burden-shifting analysis. As a preliminary matter, an official claiming qualified immunity must prove that he was engaged in a discretionary duty. *Mercado* 407 F.3d at 1156. Upon making the required showing, the burden then shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Id.* (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)). To defeat a claim to qualified immunity, a plaintiff must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow*, 457 U.S. at 818)). The Court will consider Defendant's assertion that the Complaint fails to state a cause of action demonstrating entitlement to relief in conjunction with its qualified immunity inquiry. *See GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) (motion to dismiss standard and qualified immunity inquiry may intertwine).

### a. Whether Defendant Exposito Violated Decedent's Constitutional Right

Plaintiff concedes that Defendant Exposito did not personally participate in the constitutional deprivation at issue in this action. Indeed, Plaintiff seeks to hold Defendant Exposito liable for the acts of a subordinate, namely, Defendant Borroto. It is well-established that supervisors are not subject to section 1983 liability under theories of *respondeat superior* or vicarious liability for the actions of their subordinates. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). However, the Eleventh Circuit has held that supervisors who are not alleged to have personally participated in the constitutional violation which gave rise to the section 1983 action may nonetheless be liable for a constitutional deprivation "when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360-61 (11th Cir. 2003).

9

Accordingly, if Plaintiff can establish a causal connection between the constitutional deprivation at issue in this action and Defendant Exposito, Defendant Exposito may be held liable for the deprivation. *See Cottone*, 326 F.3d at 1360-61. Such a causal connection may be established: 1) by a history of widespread abuse which puts the supervisor on notice of the need to correct the deprivation and he fails to do so, 2) when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights," or 3) "when [the] facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citations and internal quotation marks omitted).

The allegations of the Complaint which concern Defendant Exposito's supervision of Miami Police Department officers' conduct are largely conclusory. The Complaint alleges that Defendant Exposito: 1) was "responsible for implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, assigning, and disciplining officers of the City," 2) "expressly or impliedly acknowledged and assented to the failure to train, supervise, control, and/or otherwise screen officers," 3) "through [his] deliberate indifference, failed to ensure that police officers of the City did not violate the constitutional and statutory rights of citizens of . . . Florida," and 3) "despite notice and knowledge . . . as to the dangerous propensities of [the City's] police officers, failed to . . . properly train said officers or otherwise intentionally failed to protect the public . . . from danger." (DE 15, ¶¶ 72, 73, 75, 77). Standing alone, these allegations are insufficient to establish a history of widespread abuse which put Defendant Exposito on notice of a need to re-train officers in the proper use of deadly force to prevent officers' misuse of deadly force. However, attached to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss, (DE 21), is a letter from the Civil Rights Division

of the U.S. Department of Justice (the "DoJ"), (DE 21-1),[13] which details a history of widespread abuse by the Miami Police Department during the three year period immediately preceding this shooting.[14]

The DoJ letter reports the findings of a DoJ investigation into the use of deadly force by the Miami Police Department from 2008 to 2011,[15] which determined that the Miami Police Department engages in a pattern or practice of excessive use of deadly force by firearms. The historical context provided by the letter is supportive of Plaintiff's claim. The DoJ investigation commenced on November 16, 2011 – just three months after decedent was allegedly shot dead by Defendant Borroto – following Miami Police Department officers' shooting of seven young African-American men during an eight-month period spanning 2010 and 2011. *Id.*

The Investigation expanded to focus on thirty-three officer-involved shootings that occurred between 2008 and 2011, and found, *inter alia*, that: 1) the Miami Police Department found 13% of the shootings it investigated itself were unjustified and the DoJ identified other shootings that appear unjustified and "may have resulted from tactical and training deficiencies;"[16] 2) the Miami Police Department's deficiencies in tactics and training "have created an environment in which unnecessary harm occurred, and in which the threat of future unnecessary harm persists;" 3) even after investigation, few shooting cases resulted in retraining of officers and, "this lack of retraining, alongside an ongoing pervasive use of poor tactics,

---

[13] U.S. Department of Justice, Civil Rights Division, *Re: Investigation of City of Miami Police Department*, July 9, 2013, *available at* http://www.justice.gov/crt/about/spl/documents/miami_findings_7-9-13.pdf.

[14] The letter is a matter of public record, of which the Court may take judicial notice and which the Court may consider when deciding a motion to dismiss. *See* Halmos v. Bombardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (citing Tellabs, Inc. v. Makor Issues Rights, Ltd., 551 U.S. 308, 322 (2007)).

[15] The investigation was undertaken pursuant to the Violent Crime Control and Law Enforcement Act of 1994. 42 U.S.C. §14141.

[16] The Miami Police Department had only completed investigations of twenty-four of the thirty-three shootings, of which it found three, or 13%, of the shootings were unjustified.

11

suggests that *inadequate tactical training and policy deficiencies may be contributing to avoidable use of force;*" and 4) the Miami Police Department's investigations of officer-involved shootings are inadequate, which "undermines accountability and unnecessarily exposes the community and officers to risk." *Id.* (emphasis added).

The Court finds that the history of widespread use of excessive force by the Miami Police Department during the three year period preceding decedent's shooting was sufficient to put Defendant Exposito on notice of widespread constitutional deprivations, which were not corrected. Moreover, the Court finds that the Complaint's allegations, supported by the findings of the Department of Justice investigation and the Miami Police Department's own finding of a 13% unjustified shooting rate for the 2008 to 2011 period, sufficiently pled the existence of a causal connection between Defendant Exposito's failure to act and decedent's constitutional deprivation. As the Court has determined, Defendant Exposito was put on notice and failed to act, it must next determine whether the right that he failed to protect was clearly established at the time of the challenged conduct. *See al-Kidd*, 131 S. Ct. at 2080.

b. **Whether Decedent's Right Was Clearly Established**

At the time of decedent's killing, the law clearly established that supervisory officials could be held liable under section 1983 for their subordinates' constitutional violations where a causal connection exists between the supervisor's failure to act and the constitutional violations. *Cottone*, 326 F.3d at 1360-61. Moreover, the Supreme Court determined long ago that "a police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Having found that Plaintiff has met her burden of alleging sufficient facts to defeat Defendant Borroto's claim to qualified immunity, Defendants' Motion

to Dismiss Count II, to the extent that it asserts qualified immunity from civil liability and that Plaintiff failed to state a cause of action demonstrating entitlement to relief, is denied.

### 3. Official Capacity Claims Against Mayor Regalado and Former Chief of Police Exposito

The Court has already determined that "official capacity" claims against officers of a municipality are redundant in an action in which the municipality is also a defendant. *See supra* Part III.A.1. Accordingly, Count II, to the extent that it asserts claims against Defendants Regalado and Exposito in their "official capacities," is dismissed.

### 4. Section 1983 Action for Violation of Rights Under the Fifth and Fourteenth Amendments

The Court has already determined that the Fifth and Fourteenth Amendments are not implicated by the Complaint, as section 1983 actions for excessive force are properly analyzed under the Fourth Amendment. *See supra* Part III.A.2. Accordingly, Counts I and II, to the extent that they are based upon alleged violations of the Fifth and Fourteenth Amendments, are dismissed.

### C. Defendants' Motion to Stay

Defendants jointly move to stay this civil proceeding pending the resolution of related state criminal and administrative investigations. Defendants argue that a stay is appropriate because "all reports, documents, grievances, and information created or obtained in connection with the subject shooting are protected from disclosure pursuant to applicable state and federal law . . . " due to an ongoing criminal investigation into the shooting by the Miami Police Department and the State Attorney's Office. Defendants claim that: 1) they will be unable to respond to Plaintiff's discovery requests with respect to any documents created in response to the incident; 2) they may be placed at a disadvantage in their ability to defend this action because

Defendant Borroto may rely on his Fifth Amendment privilege against self-incrimination and decline to discuss anything related to the shooting; and 3) absent a stay, Defendant Borroto may be rendered unable to assert his entitlement to qualified immunity.

The mere existence of parallel criminal and civil proceedings does not compel a stay of the civil proceeding. *United States v. Lot 5, Fox Grove, Alacha Cnty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994). "[A] court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *Id.* (internal citation omitted). And, "[a] court must deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *Id.* Thus, a court must consider whether, "as a result of invoking the privilege, the defendant faces certain loss of the civil proceeding on summary judgment if the civil proceeding were to continue." *Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, No. 05-60584, 2009 WL 800144, at *2 (S.D. Fla. Mar. 25, 2009). A mere "blanket assertion of the privilege is an inadequate basis for the issuance of a stay." *Lot 5, Fox Grove*, 23 F.3d at 364.

The existence of hypothetical hardships Defendants may be subject to in the event that Defendant Borroto chooses to assert the privilege is insufficient to persuade the Court that a stay is warranted. Moreover, the Court finds Defendants' argument, that Defendant Borroto will effectively lose his ability to assert qualified immunity if a stay is denied, to be spurious. Defendant Borroto's Motion to Dismiss, (DE 30), was filed – by the same counsel who filed the Motion to Stay, (DE 32) – *before* the Motion to Stay, and nowhere in the Motion to Dismiss does Defendant Borroto assert entitlement to qualified immunity. Additionally, Defendants have failed to show that, if Defendant Borroto were to invoke the privilege, Defendant Borroto's invocation of the privilege would result in Defendants' certain loss by automatic summary

14

judgment, and not merely the loss of their "most effective defense." *See Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 947 (11th Cir. 1990). Indeed, Plaintiff must carry her burden of proving her allegations and Defendant Borroto's silence alone will not give rise to automatic liability. *See SEC v. Rehtorik*, 755 F.Supp. 1018, 1020 (S.D. Fla. 1990). Accordingly, the Motion to Stay is denied without prejudice to be re-raised by Defendants, or by Plaintiff, in the event of a change in circumstances which make a stay necessary.

## IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant City of Miami's, Tomas Regalado's, and Miguel Exposito's Motion to Dismiss First Amended Complaint and Motion to Strike **(DE 18)** be, and the same is, hereby **GRANTED IN PART** as follows:

1. Counts I and II, to the extent that they are based upon alleged violations of the Fifth and Fourteenth Amendments, are **DISMISSED.**

2. Count II, to the extent that it states a claim for supervisory liability against Defendant Regalado, is **DISMISSED.**

3. Count II, to the extent that it asserts a claim against Defendant Regalado in his "official capacity," is **DISMISSED.**

4. Count II, to the extent that it asserts a claim against Defendant Exposito in his "official capacity," is **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Rafael Borroto's Motion to Dismiss First Amended Complaint and Motion to Strike **(DE 30)** be, and the same is, hereby **GRANTED** as follows:

1. Count III, to the extent that it asserts an "official capacity" claim against Defendant Borroto, is **DISMISSED without prejudice**.

2. Count III, to the extent that it asserts liability based on "other federal laws," is **DISMISSED**.

3. Count III, to the extent that it is based upon alleged violations of decedent's rights under the Fifth and Fourteenth Amendments, is **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' Motion to Stay Proceedings Pending Resolution of Related State Criminal and Administrative Investigations **(DE 32)** be, and the same is, hereby **DENIED without prejudice** to be re-raised by any party should circumstances so change as to make a stay necessary.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's Motion for Leave to File Surreply to Defendants' Motion to Dismiss **(DE 26)** be, and the same is, hereby **GRANTED**. As noted, the Court has considered Plaintiff's Surreply to Defendants' Motion to Dismiss **(DE 26-2)** and the same is **ACCEPTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's Motion for Leave to File Surreply to Defendants' Motion to Stay **(DE 39)** be, and the same is, hereby **GRANTED**. As noted, the Court has considered Plaintiff's Surreply to Defendants' Motion to Stay **(DE 39-2)** and the same is **ACCEPTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff, should she choose to file an amended complaint, shall file an amended complaint within **twenty (20) days** of the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 29th day of January, 2014.

> JAMES LAWRENCE KING
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF FLORIDA

**Cc:**   All counsel of record